DAVID M. BENNION, USB #5664
ZACK L. WINZELER, USB #12280
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
DBennion@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendants Tesoro Companies, Inc.*
*and Tesoro Refining & Marketing Company, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| JESSE FRUHWIRTH,<br><br>Plaintiff,<br><br>vs.<br><br>YVETTE ZAYAS, Salt Lake City Police Officer; CHRISTOPHER BURBANK, Salt Lake City Police Chief; TESORO COMPANIES, INC., a Delaware Corporation; TESORO REFINING & MARKETING COMPANY, LLC, a Delaware Limited Liability Company; JOHN DOES I-XX, Salt Lake City Police Officers; MAYOR RALPH BECKER, Mayor of Salt Lake City; and SALT LAKE CITY, a municipal corporation,<br><br>Defendants. | **TESORO'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br>Civil No. 2:14-cv-00644-DB<br><br>Judge Dee Benson |

Pursuant to Federal Rule of Civil Procedure 56 and DUCivR 56-1, Defendants Tesoro Companies, Inc. and Tesoro Refining & Marketing Company, LLC (collectively "Tesoro"), by

and through counsel, move for summary judgment against Plaintiff Jesse Fruhwirth ("Fruhwirth").

**INTRODUCTION**

Fruhwirth's Complaint arises out of an interchange between himself and a Salt Lake City police officer, Sergeant Yvette Zayas, on the night of December 18, 2013. On that night, shortly before midnight, Fruhwirth drove to a street adjacent to Tesoro's oil refinery in Salt Lake City, at a time when a power outage had caused a shutdown of the refinery. He got out of his car and started videotaping the refinery. Because oil refineries are considered critical national infrastructure, Tesoro is required among other things, to report incidents of photography or videography of its refinery facilities to the National Response Center in Washington, D.C. and to the Joint Terrorism Task Force. Consistent with that requirement, Tesoro informed Sergeant Zayas of Fruhwirth's location and activity. On that night, Sergeant Zayas was off duty from her police job, and was providing security services to Tesoro pursuant to a contract between the Salt Lake City Police Department and Tesoro Refining & Marketing Company, LLC.

Sergeant Zayas, dressed in her police uniform, drove her assigned police car to the location where Fruhwirth was filming the refinery, and questioned him about what he was doing. Based upon her own observations, she considered the situation to be suspicious. She asked Fruhwirth to "hold tight" while she checked his car registration and license for warrants, etc. She did not search his car, confiscate his video camera, touch his person or tell him to stop filming. Indeed, Fruhwirth taped the interchange between himself and Sergeant Zayas, which the Court can review in ten minutes. Having conducted an independent investigation, at which no Tesoro employee was present, and having learned the identity of Fruhwirth, Sergeant Zayas

left Fruhwirth to his own devices. She gave an oral report to Tesoro, and wrote a police report for the Salt Lake City Police Department.

On the basis of these events, Fruhwirth sued Tesoro and various governmental defendants, claiming that they violated his civil rights under the First, Fourth and Fourteenth Amendments to the United States Constitution. His Complaint asserts no common law claims, but rather is limited to two causes of action—both brought under 42 U.S.C. § 1983. He seeks declaratory, injunctive and monetary relief. However, an essential element of a Section 1983 claim is that the conduct complained of must occur "under color of law," or in other words, the conduct allegedly causing the deprivation of a federal right must be fairly attributable to state action.

Tesoro is entitled to summary judgment because it is a private entity, it had no interchange with Fruhwirth whatsoever, and it did not act under color of state law. There is abundant case authority from the Tenth Circuit and federal courts around the country that a private entity's hiring of off-duty police officers to provide security services is not in and of itself state action for purposes of Section 1983. Moreover, Fruhwirth has not shown and, based upon the record evidence, cannot show that any of the four tests recognized by the Tenth Circuit and the Supreme Court for determining whether private conduct occurs under color of state law are satisfied here.

## STATEMENT OF ELEMENTS

Fruhwirth's Complaint asserts two causes of action against Tesoro under 42 U.S.C. § 1983: (1) violation of Fruhwirth's right to be free from unreasonable warrantless searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution; and (2)

violation of Fruhwirth's rights of free speech, free expression and freedom of the press under the First and Fourteenth Amendments, through unlawful detention and harassment.

To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under color of state law deprived him or her of a right secured by the Constitution of the United States. *Lugar v. Edmundson Oil, Co.*, 457 U.S. 922, 935 (1982); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On the night of December 18, 2013, there was a power outage in parts of Salt Lake City, Utah, which knocked out power at the Tesoro oil refinery located at 950 North and 400 West in Salt Lake City. (Deposition of Jesse Fruhwirth ("Fruhwirth Depo.") at 38:9-21; 39:24-40:5 (excerpts of the Fruhwirth Depo. are attached as Exhibit A); Deposition of Clyde Foreman ("Forman" Depo.") at 32:25-34:1 (excerpts of the Foreman Depo. are attached as Exhibit B).)

2. During the power outage, Fruhwirth drove his car to the refinery, and parked it on 400 West near the intersection of 400 West and Beck Street, adjacent to the refinery. (Fruhwirth Depo. at 42:1-22; Complaint at ¶ 19.) Fruhwirth got out of his car and began filming the refinery with a video camera. (Fruhwirth Depo. at 44:9-45:16.)

3. Security personnel at Tesoro noticed that an unknown individual (Fruhwirth, as it turned out) was filming the refinery, and informed Sergeant Yvette Zayas of the Salt Lake City Police Department of Fruhwirth's location and activity. (Deposition of Yvette Zayas ("Zayas Depo.") at 32:10-33:3 (excerpts of the Zayas Depo. are attached as Exhibit C).)

4. On the night of December 18, 2013, Sergeant Zayas was off duty as to her job with the Salt Lake City Police Department, but was working for Tesoro pursuant a Police Officers Secondary Employment ("POSE") contract between Tesoro Refining & Marketing Company, LLC and the Salt Lake City Police Department. (*Id*. at 19:4-14.)

5. Tesoro hires POSE officers specifically to patrol the perimeter of Tesoro refining assets in Salt Lake City," and asks them to (1) look for abandoned vehicles parked in critical areas; (2) interdict criminal trespassers; and (3) investigate suspicious photographers. (Foreman Depo. at 15:23-16:13.)

6. The Department of Homeland Security, under two separate regulatory programs (the Marine Transportation Security Act and the Chemical Facility Antiterrorism Standards Program) requires Tesoro, among other things, to report incidents of photography or videography of refinery facilities to the National Response Center in Washington, D.C. and to the Joint Terrorism Task Force. (Foreman Depo. at 8:16-10:13.)[1]

7. Tesoro policy with respect to photographers is that, if Tesoro personnel sees someone filming the refinery, they are to contact Tesoro security, and Tesoro security contacts the police department and asks the police to contact the photographer. (*Id*. 14:25-15:13) If that happens when POSE officers are present, then Tesoro security contacts the POSE officers by

---

[1] Clyde Foreman is the Regional Security Manager for the Central United States for Tesoro Refining & Marketing Company, LLC. (Foreman Depo. at 6:19-7:4.) Mr. Foreman was a special agent and a supervisory special agent for the Federal Bureau of Investigation for twenty-one years, before which we was a police officer in two municipal police departments in Washington and California for twelve years, and after which he was the chief of operations for the Chelan Sheriff's Department in Wenatchee, Washington for another two years, before joining Tesoro. (*Id*. 31:18-32:15.)

radio; but if POSE officers are not present, then Tesoro security makes a 911 call to have on-duty police officers sent to investigate. (*Id*. at 15:14-22.)

8. While Fruhwirth was outside of his parked car, filming the refinery, Sergeant Zayas, who was dressed in a Salt Lake City Police Department uniform, drove to Fruhwirth's location in a Salt Lake City police car, with lights flashing but without turning on the siren, and parked about ten to twenty feet in front of Fruhwirth's car. (Fruhwirth Depo. at 53:10-54:14; 58:8-13.)

9. Zayas considered Fruhwirth's presence and activity to be "suspicious" based upon the time of day (between 11:00 p.m. and midnight), the darkness of the night, the power outage, Fruhwirth's location, the activity of filming the refinery during a power outage, not knowing what relationship Fruhwirth had to the power outage, the manner in which Fruhwirth's car was parked, the fact that Fruhwirth had not activated his car's hazard lights, and the fact that the road where Fruhwirth was parked was deserted. (Zayas Depo. at 33:4-34:4.)

10. Sergeant Zayas got out of the police car and asked Fruhwirth what he was doing, and he told her that he was filming the refinery. (Fruhwirth Depo. at 57:7-59:19.)

11. After answering Sergeant Zayas' question about what he was doing, Fruhwirth turned his video camera on and recorded the entire interchange between himself and Sergeant Zayas from that point. (*Id*. at 59:20-61:9) Although Fruhwirth turned his video camera off while Sergeant Zayas sat in the police car running a check on Fruhwirth's registration, there was no dialogue or interaction between Sergeant Zayas and Fruhwirth during the time that the camera was turned off. Fruhwirth turned the camera back on and recorded the remaining interchange between himself and Sergeant Zayas. (*Id*. 59:20-61:10.)

12. Fruhwirth's Initial Disclosures included a digital copy of the video-recorded interchange between himself and Sergeant Zayas, which is ten minutes and nineteen seconds long, which he verified in his deposition was complete. (*Id*. at 118:2-14.) (A copy of the video was marked as Exhibit 2 to the Fruhwirth deposition, but it will be filed conventionally pursuant to a Notice of Conventional Filing, and designated as Exhibit D to this Motion.)

13. Sergeant Zayas did not touch Fruhwirth; she did not search his car; she did not touch his video camera; she did not seize the tape or disk containing the recording he had made; and she returned the only things she took from him (license, registration and insurance card). (Fruhwirth Depo. at 64:14-65:7.) Sergeant Zayas did not tell Fruhwirth to turn his video camera off; she did not ask to see the video recording that he had made. (*Id*. 63:5-16.)

14. After she made contact with Fruhwirth, Sergeant Zayas gave a verbal report to Clyde Foreman about her interaction with Fruhwirth, but provided no written report to Tesoro. She generated a police report relating to her interaction with Fruhwirth, which she submitted to the Salt Lake City Police Department, but not Tesoro. (Zayas Depo. at 26:10-27:8 and Exhibit 1 to the Zayas Depo.)

15. Sergeant Zayas testified that if she had been on the same street, at the same hour of the day, under the same circumstances, and had encountered Fruhwirth filming the refinery, *but had been on duty with the Salt Lake City Police Department*, she would not have done anything differently than she did. (*Id*. at 48:3-7.)

## ARGUMENT

**FRUHWIRTH'S CLAIMS AGAINST TESORO FAIL BECAUSE TESORO IS NOT A STATE ACTOR, AND HIRING SERGEANT ZAYAS IS NOT A VIOLATION OF EITHER THE FOURTEENTH AMENDMENT OR 42 U.S.C. § 1983.**

**A. Requirement of State Action.** Both of Fruhwirth's two causes of action against Tesoro are based upon the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. The Fourteenth Amendment, however, provides in pertinent part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." Thus, a bright-line distinction exists between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private action, which is not. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir. 1995). The First and Fourth Amendments, which are the underlying bases of Fruhwirth's two claims, have the same dichotomy. The First Amendment protects against laws made by "Congress." The Fourth Amendment prohibits only unreasonable searches and seizures conducted by government and its agents. *Gallagher*, 49 F.3d at 1446.

Similarly, under 42 U.S.C. § 1983, liability for constitutional violations only attaches to conduct occurring under "color of law." "Thus, the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *Id*. (quoting *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961))).

**B. Hiring Off-Duty Police Officers Does Not Equate to State Action.** Fruhwirth has not alleged nor is there any record evidence that, on the night of December 18, 2013, he had any interaction whatsoever with any person other than Sergeant Zayas. Indeed, the only conduct Fruhwirth alleges against Tesoro specifically is that Tesoro "hires off-duty Salt Lake City police

officers (including defendant Zayas) to provide security and other services at its refinery located in Salt Lake City." (Complaint, ¶¶ 7-8.) Thus, according to Fruhwirth, the mere fact that Tesoro "hired" Sergeant Zayas under the POSE contract to provide security services at its refinery in her off-duty hours means that Tesoro is in a "joint enterprise" with Zayas and other governmental defendants such that Zayas' actions on the night of December 18, 2013 constitute state action by Tesoro under color of state law. (Complaint, ¶ 16.)

Fruhwirth's claims fail as a matter of law because merely engaging off-duty police officers to provide security services does not make a private employer a state actor. The Tenth Circuit so held in *Draeger v. Grand Central, Inc.*, 504 F.2d 142 (10th Cir. 1974). In that case, department store Grand Central hired an off-duty Orem City police officer, David Park, as a security guard. One evening Park was off duty from his police job and engaged in security work for Grand Central. He thought he saw the plaintiff shoplifting. He placed the plaintiff under arrest, twisted his arm, detained him and searched him. No stolen merchandise was found. The plaintiff brought an action in this Court, asserting claims under 42 U.S.C. § 1983 and under the common law for false imprisonment and false arrest. The jury returned a verdict against both Grand Central and Park under Section 1983 and the common law. *Id*. at 143.

The Tenth Circuit reversed in part and affirmed in part, holding that, although Grand Central could be held liable under the common law claims, it ***could not*** be held liable under Section 1983 merely because it hired an off-duty police officer to provide security services. *Id*. at 146.[2] The *Draeger* court cited cases from the Seventh and Eighth Circuits and various district

---

[2] The court held that Park could be liable under both the common law claims and the Section 1983 claim. 504 F.2d at 146.

courts for the proposition that, "[g]enerally speaking, the doctrine of vicarious liability or respondeat superior has been ruled out in cases arising under the Federal Civil Rights statutes." *Id*. at 146 (citations omitted). The court reiterated the fundamental concepts that: (1) "a private entity does not have the requisite official character and thus cannot be reasonably concluded to be representing the state"; and (2) "[t]he Fourteenth Amendment does not, of course, protect against private action." *Id*. The court held:

> We are of the opinion then that the appellant department store cannot be held liable solely as a master or principal. ***If the store were an active participant it could still not be state action.*** Therefore, the aggrieved person must look to common law actions for relief.
>
> . . . [W]e consider the judgment against Grand Central on the civil rights claim to be out of harmony with the applicable constitutional provision and the federal statute enacted pursuant thereto.

*Draeger*, 504 F.2d at 146 (emphasis added).

Similarly, in *Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001), the Fifth Circuit affirmed summary judgment in favor of a department store (Dillard's), its insurer, and an off-duty police officer hired by Dillard's to provide security services—on plaintiff's Section 1983 claims and common law claims arising from the officer's conduct in arresting, handcuffing and detaining the plaintiff. Citing *Lugar v. Edmundson Oil, Co.*, 457 U.S. 922, 924, 928-32 (1982), the court repeated the familiar requirement that, for a plaintiff to state a viable claim under Section 1983 against a private defendant, the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of state law. 277 F.3d at 746. Like Sergeant Zayas, the off-duty police officer hired by Dillard's was wearing his police uniform when he acted. *Id*. at 746. An important fact in the court's

analysis was the officer's independent investigation, independent observation and completion of his own incident report. *Id*. at 750.

Here, as in *Morris*, there is undisputed record evidence that Sergeant Zayas conducted an independent investigation, which was based upon her own observations, and completed her own police report. (*See* Statement of Undisputed Material Facts, Nos. 8-10 and 14.)

Similar results have obtained in numerous district court actions around the country. For example, in *Jones v. Wet Seal Retail, Inc.*, 519 F. Supp. 2d 1164 (D. Kan. 2007), the district court denied a plaintiff's motion for leave to amend her complaint to add a Section 1983 claim against a retailer and security guards' employer (where one of the guards was an off-duty Reserve Police Officer for the City of Overland Park, Kansas (who was wearing a city-issued police uniform and carrying a city-issued police badge)). The court held that the motion was futile because an allegation of employment of an off-duty police officer was insufficient to constitute state action. 519 F. Supp. 2d at 170. *See also Mixon v. Cowboys OKC, Inc.*, No. Civ-12-100-R, 2012 WL 1977952, at *2–4 (W.D. Okla. June 1, 2012) (granting, on color of state law grounds, motion to dismiss complaint that alleged a private entity hired University of Oklahoma policemen as private security guards, who wore their official uniforms, carried their official badges, carried their service guns, and shot the plaintiff); *Tillery v. City of Claremore*, No. 09-CV-697, 2010 WL 3368657, at *2 (N.D. Okla. Aug. 24, 2010) (granting, on color of state law grounds, motion to dismiss complaint that alleged a private apartment complex owner hired off-duty police officer, but which did not allege facts suggesting officer's use of excessive force resulted from any concerted action between owner and officer, whether through conspiracy, prearranged plan, customary procedure or policy).

Application of these legal principles to the present action confirms that summary judgment should be granted in Tesoro's favor. Most importantly, as shown above, the mere fact that a private entity hired off-duty police officers is not enough to establish state action. The hiring of off-duty police officers, however, is all that Fruhwirth can show. Moreover, Fruhwirth has no evidence to meet any of the four tests described by the Tenth Circuit in *Gallagher* to show that "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" *Gallagher,* 49 F.3d at 1447 (quoting *Lugar,* 457 U.S. at 937).

**C. Fruhwirth Cannot Meet the *Gallagher* Tests.** Of the four *Gallagher* tests, the only one that Fruhwirth even has an allegation about is the "joint action" test. However, the bare allegation in Fruhwirth's Complaint of a "joint enterprise" lacks any reference to specific facts. (Complaint ¶ 16.) More importantly, Fruhwirth has adduced no evidence of such a joint enterprise or action. In *Gallagher,* the Tenth Circuit stated that the mere fact that the state and private actors arguably shared the common goal of producing a profitable music concert did not establish the necessary degree of concerted action. 49 F.3d at 1455. The court explained that, "[u]nder this approach, state and private entities must share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Id*. Here, of course, there is not even the common goal of monetary profit between Tesoro and the governmental defendants. To the contrary, the undisputed evidence simply shows that Tesoro's only goal related to Fruhwirth was to comply with the Homeland Security reporting requirements relating to photography and videography of critical infrastructures such as oil refineries. (*See* Statement of Undisputed Material Facts, No. 6.)

Fruhwirth has also offered no evidence or even any allegations of the "nexus test," that is that a sufficiently close nexus exists between Tesoro and Zayas such that Tesoro could fairly be treated as a state actor. *See Gallagher*, 49 F.3d at 1448. There is no evidence that Zayas or the other governmental defendants exercised coercive power over Tesoro or provided such significant encouragement to Tesoro that its decisions or actions must be or even can be deemed to be that of the governmental defendants. Indeed, other than alerting Zayas to Fruhwirth's presence and video graphic activity, Tesoro did nothing as it relates to Fruhwirth.

Fruhwirth likewise has no evidence under the "symbiotic relationship" test. *See Gallagher*, 49 F.3d at 1451. The record is devoid of evidence that the government defendants have "so far insinuated [themselves] into a position of interdependence" with Tesoro that "it must be recognized as a joint participant in the challenged activity." *Id*. (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)). Indeed, the undisputed evidence is that, if Tesoro sees a photographer filming the refinery when POSE officers are present, then Tesoro security contacts the POSE officers by radio; but if POSE officers are not present, then Tesoro security makes a 911 call to have on-duty police officers sent to investigate. (Statement of Undisputed Material Fact No. 7.)

Finally, under the "public function test," Fruhwirth has not alleged, much less developed evidence, that Tesoro exercises powers traditionally reserved exclusively to the State. *Gallagher*, 49 F.3d at 1456. Interestingly, as shown immediately above, Tesoro's policy with respect to photographers is quite the opposite of usurping traditional police power by attempting to interdict or investigate photographers filming Tesoro's refinery. Instead, Tesoro's policy, which it followed with Fruhwirth, is to have its security personnel call the POSE officers or 911

and let the police handle that public function. Fruhwirth has asserted no public functions exercised by Tesoro, nor does his Complaint allege any that the governmental defendants have delegated to it.

Thus, Fruhwirth has not met any of the tests laid out in *Gallagher* to show that any act by Tesoro at or around December 18, 2013, vis-à-vis Fruhwirth, can properly be considered as arising under color of state law. The most Fruhwirth can say is that Tesoro engaged Sergeant Zayas under the POSE program, which is, as a matter of law, insufficient to establish state action.

## CONCLUSION

For the reasons state above, summary judgment should be granted on all of Fruhwirth's claims against Tesoro.

DATED this 1st day of March, 2016.

/s/ David M. Bennion
DAVID M. BENNION
ZACK L. WINZELER
PARSONS BEHLE & LATIMER

*Attorneys for Defendants Tesoro Companies, Inc. and Tesoro Refining & Marketing Company, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2016, I electronically filed the foregoing **TESORO'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** with the Clerk of the Court using the CM/ESC system that will send electronic notification to the following individuals:

Stewart Gollan, Esq.
584 North Wall Street
Salt Lake City, UT 84103

Samantha J. Slark
Salt Lake City Attorney's Office
451 S. State Street, Suite 505A
P.O. Box 145478
Salt Lake City, UT 84111-5478

/s/ David M. Bennion